**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANNE BREWER, et al | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SMITHKLINE BEACHAM CORPORATION | : | |
| d/b/a GLAXOSMITHKLINE | : | NO. 10-4443 |

_____

| | | |
|---|---|---|
| TINA LEWIS, et al | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SMITHKLINE BEACHAM CORPORATION | : | |
| d/b/a GLAXOSMITHKLINE | : | NO. 10-4446 |

_____

| | | |
|---|---|---|
| JACOB DEAN, et al | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SMITHKLINE BEACHAM CORPORATION | : | |
| d/b/a GLAXOSMITHKLINE | : | NO. 10-4444 |

_____

| | | |
|---|---|---|
| HEATHER RUTTINGER, et al | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SMITHKLINE BEACHAM CORPORATION | : | |
| d/b/a GLAXOSMITHKLINE | : | NO. 10-4445 |

_____

| | | |
|---|---|---|
| KAYLA BELL, et al | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SMITHKLINE BEACHAM CORPORATION | : | |
| d/b/a GLAXOSMITHKLINE | : | NO. 10-4448 |

_____

| ISABELLA ANDREA MOORE, et al | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| SMITHKLINE BEACHAM CORPORATION | : | |
| d/b/a GLAXOSMITHKLINE | : | NO. 10-4447 |

---

| CHRISTINE HESS on behalf of | : | CIVIL ACTION |
|---|---|---|
| her minor child HOLDEN COTES | : | |
| | : | |
| v. | : | |
| | : | |
| GLAXOSMITHKLINE, et al | : | NO. 10-5198 |

---

| CHRISTINE HESS on behalf of | : | CIVIL ACTION |
|---|---|---|
| her minor child KADEN COTES | : | |
| | : | |
| v. | : | |
| | : | |
| GLAXOSMITHKLINE, et al | : | NO. 10-5199 |

## MEMORANDUM OPINION

**Savage, J.**                                                    **March 24, 2011**

### Introduction

In ruling on the remand motions before us, we are confronted with an atypical factual scenario that requires us to apply the Supreme Court's "nerve center" test enunciated in *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010), to determine the citizenship of a holding company that is the sole member of the defendant limited liability company. In doing so, we consider how a corporation's status as a holding company factors into the jurisdictional calculus where the actual defendant is an operating limited liability company

whose sole member is a holding company that delegates its operational decision-making to the operating company.

We conclude that, in this case, for purposes of determining the citizenship of a limited liability company whose sole member is a holding company that does not direct or control the operations of the limited liability company, we look to the "nerve center" of the limited liability company to which the holding company has delegated the operational decision-making. This conclusion is based upon the rationale of the *Hertz* holding and the unusual circumstances surrounding the relationship between the limited liability company and the holding company that owns an investment in it. Therefore, because the defendant's "nerve center" is located in Pennsylvania and under 28 U.S.C. § 1441(b) an action is not removable when any defendant is a citizen of the state in which the action was brought, we shall grant the motions for remand.

### Procedural History

After the defendant removed these eight pharmaceutical liability cases from the state court, the plaintiffs moved for remand. They contend there is an absence of complete diversity, depriving the federal court of subject matter jurisdiction. They argue that applying the "nerve center" test for determining a corporation's citizenship as recently formulated by the Supreme Court in *Hertz*, the defendant's principal place of business is in Philadelphia, Pennsylvania. The plaintiffs contend that because there is a lack of complete diversity, removal is improper. Without any further argument, they also cite 28 U.S.C. § 1441(b) as a ground for remand.

Opposing remand, defendant GlaxoSmithKline LLC ("LLC"), formerly SmithKlineBeecham Corporation ("SKB"), counters that there is complete diversity because

it is a Delaware citizen for jurisdictional purposes and none of the plaintiffs is a Delaware citizen. Invoking the Third Circuit's holding in *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412 (3d Cir. 2010), it argues that its citizenship, as a limited liability company, is that of its sole member, GlaxoSmithKline Holdings (Americas) Inc. ("Holdings"), a Delaware corporation that is headquartered there. It asserts that Holdings's principal place of business is in Delaware, where it is incorporated and holds its board of directors meetings. Thus, it contends that the defendant's citizenship is other than Pennsylvania, resulting in complete diversity and permitting removal under §§ 1441(a) and (b).

### The Companies

GlaxoSmithKline plc ("PLC") is an incorporated United Kingdom company that is at the top of the GlaxoSmithKline ("GSK") global group of companies. PLC is a pharmaceutical and consumer healthcare company whose business involves sales, manufacturing, research and development in pharmaceutical and consumer healthcare worldwide.[1]

GlaxoSmithKline LLC ("LLC") is the entity through which PLC conducts its pharmaceutical and consumer healthcare business in the United States.[2] Until October 27, 2009, PLC conducted its pharmaceutical and consumer healthcare business in the United States through SKB. SKB's headquarters and principal place of business were in Philadelphia. The senior officers of SKB directed and controlled the activities of SKB from

---

[1] *See* Deposition Transcript of Julian Heslop ("Heslop. dep.") at 14. Julian Heslop is the Chief Financial Officer of PLC and is based in London. He is also the President and a director of Holdings. His deposition was taken pursuant to Federal Rule of Civil Procedure 30(b)(6) on October 15, 2010.

[2] *See* Heslop dep. at 191 (LLC performs GSK's pharmaceuticals and consumer healthcare business in the United States); Heslop dep. at 83 ("U.S. pharmaceutical business . . . is fundamentally LLC"); Heslop dep. at 15, 16 (LLC is the entity through which GSK conducts "by far the bulk of its U.S. business").

their Philadelphia offices at One Franklin Plaza.[3]

In October of 2009, SKB was converted from a Pennsylvania corporation to a Delaware limited liability company to accomplish a joint venture between Pfizer and GSK to research, develop and market HIV drugs. To avoid substantially adverse tax consequences and to assure legal continuity for the protection of intellectual property and contract rights, SKB had to transfer its assets to a Delaware corporation and then to a Delaware limited liability company. Delaware was chosen because, unlike Pennsylvania, it allows a corporation to convert to a limited liability company without liquidating or dissolving the corporation.[4] Thus, after converting the Pennsylvania corporation into a Delaware corporation, SKB transferred its assets to the newly formed GlaxoSmithKline LLC in Delaware with Holdings as its sole member, which had been the sole shareholder of SKB.

SKB did not dissolve when it was converted to LLC. As perceived by its Rule 30(b)(6) witness, Julian Heslop, LLC is "simply a continuation of what used to be SKB," with LLC having "the same rights and obligations that it always had, and it "can be sued in exactly the same way."[5] According to the limited liability company agreement forming LLC, SKB's senior officers, board of directors and members of the Executive Committee continued in their same positions for LLC.[6] The agreement dicates that SKB's board of directors shall serve as the "manager" of LLC, stating that LLC's "business and affairs

---

[3] Heslop dep. at 18, 23-24, 106.

[4] *Id.* at 20-21, 137-39, 143.

[5] *Id.* at 145.

[6] *Id.* at 24, 52, 54.

. . . shall be managed by" SKB's board.[7]

Although LLC is registered in Delaware, the limited liability company agreement recites LLC's "business address" as One Franklin Plaza in Philadelphia. Heslop describes this Philadelphia "business" address as LLC's headquarters or "principal place of business." The agreement further requires that the books, records and accounts of LLC's business and financial condition be kept in Philadelphia, and that the board of directors meet there as well.[8] Approximately 1800 employees work in LLC's Philadelphia offices. The Philadelphia offices house the marketing, communications, finance, IT, HR, sales, administration and other corporate functions of LLC.[9]

The senior officers of LLC direct and control LLC's pharmaceutical and consumer healthcare business.[10] Of the ten senior officers who direct and control LLC's business and make LLC's business decisions, eight do so from Philadelphia; one from King of Prussia, Pennsylvania; and one from North Carolina.[11] Additionally, three of the four

---

[7] *Id.* at 52. *See also* Declaration of Julian Heslop, dated June 25, 2010 ("Heslop decl."), ¶ 12 ("LLC is a manager-managed limited liability company member, GlaxoSmithKline Holdings Americas, has elected individuals to manage and control the business and operations of LLC."). Heslop made his declaration to use in prior litigation.

[8] Heslop dep. at 49-54, 107.

[9] *Id.* at 32, 34; Deposition of Michael Corrigan ("Corrigan dep.") at 44. Michael Corrigan's deposition was taken on November 2, 2010. LLC also occupies Three Franklin Plaza, which adjoins One Franklin Plaza. Corrigan's office is in Three Franklin Plaza. Corrigan dep. at 41-42.

[10] Heslop dep. at 25-26, 47-48.

[11] Heslop dep. at 43-48. Specifically, SKB's (now LLC's) senior officers and their respective positions include: Don Phelan: strategy, IT, HR, global real estate; Michael Corrigan: CFO and head of finance group; Deidre Connelly: President of N. American pharmaceuticals; William Mosher: Vice Pres. and Secretary, lawyer; Jan Lyons: U.S. tax specialist; Audrey Klijian: deputy treasurer; Arlene Sothern: Assistant Secretary, paralegal; Justin Huang: Assistant Secretary; Charles Kinzig: Assistant Secretary; Mark Werner: Senior Lawyer. *Id.* Except for Werner, who works out of North Carolina, and Kinzig, who works out of King of Prussia, Pennsylvania, all other LLC senior officers work out of Philadelphia.

directors of LLC are based in Philadelphia.[12]

LLC has one member, Holdings.[13]  Holdings is a Delaware corporation that was formed in 1999.  Before SKB was converted to LLC in October of 2009, Holdings was the sole shareholder of SKB.  In other words, SKB was a wholly-owned corporate subsidiary of Holdings.[14]  With SKB's conversion to an LLC, Holdings now owns an investment in LLC.[15]

Holdings is a holding company, not an operating company.  It has an investment in LLC and has intra-group accounts with other GSK companies.[16]  Its "activities" are approving the timing and amount of dividends up the GSK corporate chain, as well as holding and managing intra-group assets and liabilities.[17]  Its directors monitor the investment that Holdings has in LLC, which is one of its "principal investments."[18]  Holdings also serves as the top United States company for the tax return of the GSK group.  In its corporate capacity, Holdings does not have operations, such as manufacture or sales of

---

[12] Heslop dep. at 47, 53.  The four directors of LLC are Donald Phelan, Michael Corrigan, Deidre Connelly and Mark Werner.  Heslop dep. at 53.  Corrigan testified that 40% of the time he works from Philadelphia, 20% from North Carolina and the remaining 40% "in the field" and "a little bit in London." Corrigan dep. at 66.

[13] Heslop dep. at 18, 49, 146.  The relationship of LLC to PLC is as follows:  PLC owns all of the stock in a holdings company called GlaxoSmithKline Holdings, and that company owns all of the stock in GlaxoSmithKline Finance plc ("Finance").  Finance owns all of the shares of stock of Holdings, and Holdings is the sole member and "owner" of LLC.  Heslop dep. at 17, 19.

[14] Heslop dep. at 59, 146-47.

[15] *See* Deposition of Donald McLamb ("McLamb dep.") at 136.  McLamb's deposition was taken on December 10, 2010.

[16] Heslop dep. at 59-60, 166.

[17] Heslop decl. ¶15; Heslop dep. at 132; Corrigan dep. at 17; McLamb dep. at 115.

[18] McLamb dep. at 131-32.  As explained *infra* in greater detail, as sole member of LLC, Holdings has delegated its rights and power to manage and control the business and affairs of LLC to LLC's directors and officers.

goods or services.  It has no infrastructure.[19]

Against this backdrop, we must determine the defendant's principal place of business to establish its citizenship.  Thus, we now review the applicable legal standard.

## Determining Citizenship for Diversity Jurisdiction

A limited liability company's citizenship, in the Third Circuit and in all other circuits that have considered the issue, is determined by the citizenship of its members.  *Zambelli*, 592 F. 3d at 418.  A limited liability company is treated as a partnership rather than a corporation.  *Id.* at 420.  Thus, we must look to the citizenship of each of the limited liability company's members when performing the diversity jurisdiction analysis.

The only member of LLC is Holdings, a corporation.  For diversity jurisdiction purposes, a corporation is a citizen of the state where it is incorporated and has its principal place of business.  28 U.S.C. § 1332(c)(1).

The principal place of business is the place "where a corporation's officers direct, control, and coordinate the corporation's activities" - its "nerve center."  *Hertz Corp.*, 130 S. Ct. at 1192.  It is not the state where the corporation conducts much of its business activities, but rather the place within the state from which it directs, controls and coordinates those activities, usually its headquarters.  *Id.* at 1193.  It is where the "brain" of the corporation is located.  *Id.*  The "word 'principal' requires us to pick out the 'main, prominent' or 'leading' place."  *Id.* at 1192 (citing 12 Oxford English Dictionary 495 (2d ed. 1989)).

In determining a corporation's "nerve center," we apply a qualitative, not a

---

[19] Heslop dep. at 59, 147, 150; Corrigan dep. at 103.

quantitative, test. There is no weighing of different factors. We do not assess or compare the corporation's "functions, assets or revenues," but examine its "overall direction, control and coordination." *Hertz Corp.*, 130 S. Ct. at 1194. Focusing on a place within the state and not on state-wide activities, we distinguish between a corporation's headquarters and places where it conducts its business activities.

A corporation's nerve center is "not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 1192. The Supreme Court cautioned that if "the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat," this would reveal "attempts at manipulation." *Id*. at 1195. In that case, the court "should instead take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation." *Id.*

As directed by *Hertz* and *Zambelli*, we shall examine Holdings's center of direction, control and coordination in the context of its dual role as a holding corporation and as the sole member of LLC.

*Holdings's Corporate Role and Activity in Delaware*

The directors of Holdings, both before and after SKB's conversion to LLC, have been the same - Michael Corrigan, Heslop and Donald McLamb.[20] The directors are also officers of Holdings. Heslop is its president; Corrigan, Vice President; and McLamb, Secretary. Other Holdings officers include: Treasurer, Sara-Jane Chilver-Stainer, who is

---

[20] Corrigan is a director of LLC and its CFO. *See supra* nn. 11 and 12. McLamb is an employee of Wilmington Trust SP Services, Inc. ("Wilmington Trust") and a certified public accountant. He works and resides in Wilmington. McLamb dep. at 9; Declaration of Donald McLamb, dated Nov. 22, 2010 ("McLamb decl."), ¶¶ 1-3.

Treasurer of PLC and based in London; Assistant Treasurer, Jan Lyons, who is senior tax specialist of LLC and based in Philadelphia; and Assistant Secretary, Elizabeth Bothner, who is employed by Wilmington Trust SP Services, Inc. ("Wilmington Trust") and based in Wilmington. The only person on Holdings's payroll is Bothner, who works approximately 20 hours annually for the company.[21]

Holdings's board of directors meets quarterly in Wilmington. At the meetings, which last between 15 and 30 minutes, the three directors vote on a limited number of financial issues on an agenda prepared in Philadelphia.[22] They typically review and approve financial statements that have been prepared by George Brown, an accountant at PLC in London; decide whether to pay a dividend; approve a restructuring; and approve strategic decisions regarding investments that people from the London office have formulated.[23]

In his role as a Holdings officer and director, Corrigan spends approximately two to three hours preparing for each board meeting by reviewing documents. Most often, he prepares in Philadelphia.[24] McLamb spends about one hour per year performing his duties as corporate secretary. These duties include chairing the board meetings and serving as a signatory on Holdings's bank account. As director, he spends approximately one-half

---

[21] McLamb dep. at 9, 24-26, 35; Heslop dep. at 109; Heslop decl. ¶¶ 20-21; McLamb decl. ¶¶ 1-3. As assistant secretary and part-time employee, Bothner attends the board meetings, records the minutes, schedules board meetings, acts as signatory on the checking account, supervises filing of the franchise tax, and supervises administration of the payroll to Holdings's sole employee - herself - and the filing of payroll forms. McLamb dep. at 17, 31, 34-38.

[22] Heslop dep. at 42; McLamb dep. at 34. Arlene Sothern, a paralegal in Philadelphia and an officer of LLC, prepares the agenda, which she sends, via email, along with the income statements, balance sheets, notes, an analysis of the intra-company receivables and payables accounts and minutes from preceding board meeting, to the directors in advance of the meeting. McLamb dep. at 41, 100-104, 106; Ex. 22 to Plaintiffs' Surreply (Doc. No. 57).

[23] Heslop dep. at 62-64, 74-75, 132, 165-66.

[24] Corrigan dep. at 10-11, 66.

hour preparing for each board meeting, and twenty to thirty minutes attending the meeting, for a total of four hours per year. He performs all of these duties in Wilmington.[25] Although Heslop did not specifically testify about how much time he spends preparing for each board meeting, based on the time Corrigan and McLamb spend, it can be presumed that Heslop similarly spends little time at this task.[26] McLamb is the only director who consistently attends the quarterly meetings in person. Corrigan and Heslop usually attend the board meetings telephonically.[27]

McLamb's employer, Wilmington Trust, provides corporate services to Delaware holding companies. McLamb spends about half of his work week managing Wilmington Trust's services to 200 holding company accounts, and the other half preparing taxes for 250 other clients. He serves as a director or officer of 50 to 75 companies.[28] The services Wilmington Trust provides to Holdings, via McLamb and Bothner, include acting as registered agent for accepting service of process in Delaware, providing an office, accepting mail, forwarding mail, paying bills, and providing two officers and a director for the company.

The bills that Wilmington Trust pays on behalf of Holdings include phone bills, sublease rent payments, Wilmington Trust service fees, payroll tax, franchise tax,

---

[25] McLamb dep. at 30-34, 40-42.

[26] Heslop and Corrigan are also officers and directors of two other GSK holdings companies: SB Holdings, which owns GSK's stake in Quest, and GSK Capital, a company that issues GSK's bonds to external investors in the U.S. market. McLamb is also a director and officer of SB Holdings. The board meetings for these two other holdings companies are held sequentially, and last about 15 to 30 minutes each. Heslop dep. at 42; McLamb dep. at 63-66.

[27] Heslop dep. at 66, 75, 91-92, 127; Corrigan dep. at 23-24.

[28] McLamb dep. at 15-16, 123.

accounting fees and bank fees, all in connection with the Wilmington office. Holdings has a CitiBank account from which the bills and any other operating expenses are paid. The maximum amount of funds McLamb is authorized to release on behalf of Holdings is $2,500.[29]

Holdings subleases an office from Wilmington Trust in the same building occupied by Wilmington Trust.[30] The office is a 10' x 10' room furnished with a desk, file cabinets and an unused computer. Although there is a telephone in the room, incoming calls are routed to a Wilmington Trust operator who in turn patches them to LLC at its Philadelphia headquarters. Most of the mail is forwarded to LLC's office in Philadelphia.[31] Only the minutes and secretarial papers of the company are stored there.[32] Holdings's financial records and books are maintained in London. The quarterly board meetings are held in a Wilmington Trust conference room on another floor of the building. As Heslop characterized it, the lease to the Wilmington space is "immaterial" in the scheme of things.[33]

---

[29] McLamb dep. at 17, 43, 73-74, 134-35.

[30] Wilmington Trust occupies five floors in the building, the majority of which is subleased as office space to approximately 150 holding companies. McLamb dep. at 21-23.

[31] Although bank statements, bills and payroll and franchise tax documents are not forwarded, legal documents, publications and tax documents other than payroll and franchise tax documents are forwarded to LLC in Philadelphia, and checks for second signature are forwarded to London. Ex. 3 to Plaintiffs' Surreply (Doc. No. 27).

[32] Two other GSK holdings companies, SB Holdings and GSK Capital, sublease the same office in the building as Holdings, and use it for the same limited purposes as Holdings does. McLamb dep. at 20-21.

[33] McLamb dep. at 11-17, 19-20, 44, 51-53, 123; Heslop dep. at 33; Ex. 3 to Plaintiffs' Surreply (Doc. No. 27).

*Holdings's Role as LLC's Sole Member*

Having examined what Holdings does in Delaware, we shall now look at what it does as LLC's sole member. Our examination entails looking at what LLC does for Holdings.

SKB converted into a limited liability company under the Delaware Limited Liability Company Act ("LLC Act"). *See* Del. Code Ann. tit. 6, §§ 18-201, 214.[34] Under the LLC Act, a limited liability company must have at least one member. *Id.*, § 18-101(6). A limited liability company member is a beneficial owner of an interest in the company, possessing ultimate control over it. *See* Thomas A. Humphreys, *Limited Liability Companies*, §§ 2.01[1], 3.01[1] (2010). Unless the limited liability company agreement provides otherwise, "the management of a limited liability company shall be vested in its members." Del. Code Ann. tit. 6, §§ 18-402.

Under Delaware law, the limited liability company agreement may provide for the management of the limited liability company to be "vested in the manager" chosen by the members. *Id.*, § 18-402. Specifically, members of the limited liability company have "the power and authority to delegate . . . [their] rights and powers to manage and control the business and affairs of the limited liability company." *Id.* § 18-407. The delegation may be to members or non-members or a combination of both of the limited liability company. *Id.*; Humphreys, *supra*, §§ 2.01[2], 3.01[2], 4.02[2](a).[35] At the same time, delegation of the management and control of the limited liability company's business and affairs does not affect the member's membership. Del. Code Ann. tit. 6, § 18-407.

---

[34] Heslop decl. ¶ 9.

[35] A member-managed limited liability company is considered to have "decentralized" management, while a manager-managed company has "centralized" management. Humphreys, *supra*, § 4.02[2](a).

LLC is manager-managed.  Holdings has elected individuals to manage and control the business and operations of LLC.[36]  Specifically, LLC's officers and directors have been named to "manage LLC's business and affairs."[37]  Thus, in accordance with Del. Code. Ann. tit. 6, § 18-407, Holdings has delegated its rights and powers to manage and control the business and affairs of the limited liability company to LLC's directors and officers.

As described by Heslop, Holdings has delegated the decision-making affecting the direction, control and coordination of LLC to those actually running the LLC operation in Philadelphia.  He testified that senior officers direct and control the activities of the United States pharmaceutical business from Philadelphia.  In short, the operational and business decisions affecting LLC are not made by Holdings or its board of directors, but are made and directed by the officers and directors of LLC.

<u>As Sole Member of LLC, Holdings's Nerve Center Is Philadelphia</u>

Where the sole member of a limited liability company is a holding company that holds one constituent company and several intra-group accounts, we are presented with an anomaly in applying the "nerve center" test.  In this situation, the *Hertz* "nerve center" test and the *Zambelli* limited liability company citizenship test meld.

*Hertz* makes a distinction between the place where the operational goals are set and where the operations are carried out.  The focus is on the operational decision-making process. A holding company, unlike an operating company, does not typically make decisions directly affecting business operations of its constituent companies.  Those

---

[36] Heslop decl., ¶ 12; Heslop dep. at 52, 54, 188.

[37] Heslop dep. at 43-48, 52.

decisions are usually made by each of the companies under its umbrella. That is the situation here.

As LLC's sole member at its inception, Holdings had the exclusive right and power to control, direct, run, manage and operate LLC. *See* Del. Code Ann. tit. 6, § 18-407. If LLC were a member-managed company, Holdings would have retained its absolute right, power and authority to control and operate LLC's business. *See id.* § 18-402; Humphreys, *supra*, § 2.02[4](d). But, it is not member-managed. Instead, Holdings elected to make LLC a manager-managed company. To that end, Holdings delegated certain of its rights and powers. The specific rights and powers it delegated were the management, direction and control of the business and affairs of LLC. It has delegated the operational decision-making authority and power of LLC to LLC's officers and directors. Put another way, Holdings has determined that the directors and officers of LLC are to be LLC's "managers."

At the same time, this delegation of the management, direction and control of LLC's business activities to the "managers" in Philadelphia did "not cause the member [Holdings] . . . to cease to be a member . . . of the limited liability company." *See* Del. Code Ann. tit. 6, § 18-407. The "managers" of LLC are still part of Holdings because they are *managing* LLC *on behalf of* Holdings.

Applying the *Hertz* nerve center test to the unique circumstance where the holding company is the sole member of a manager-managed limited liability company, we conclude that the "nerve center" of Holdings is Philadelphia. This is because Holdings has factually and legally delegated the vast majority of its decision-making to LLC's officers and directors - the "managers" of LLC - who operate from Philadelphia.

To be clear, we are not focusing on the business *activities* taking place in

Philadelphia.  LLC has many operations, plants and facilities throughout and outside Philadelphia and Pennsylvania.  Our focus is on the place from where those operations are *directed, controlled* and *coordinated*.  That place is Philadelphia, where the top-level officers to whom Holdings delegated the decision-making authority are headquartered. LLC has no office in Delaware from which any direction or control could emanate.

Although Holdings's board of directors and officers are solely responsible for directing and controlling some of Holdings's limited business activities, such as its investment decisions,[38] and LLC's managers are not involved in the direction or control of these activities, Holdings's investment decisions comprise a minor part of Holdings's overall business. The management of its LLC business requires a significantly larger amount of operational decision-making and strategizing than does the directing and controlling of Holdings's corporate and investment business activities.  Thus, having delegated the direction, control and coordination of LLC to managers who operate from Philadelphia, Holdings has effectively transplanted the vast majority of its "brain" or "nerve center" to its managers in Philadelphia, leaving only a small part of its "brain" in Delaware, Philadelphia and London, where its investment decisions and strategy are made.

Because LLC's business of pharmaceutical and consumer healthcare is directed, controlled and coordinated from Philadelphia, and LLC is the primary part of Holdings's business, Holdings's "nerve center" is in Philadelphia where its principal place of business is located.

---

[38] These activities and decisions include deciding whether to pay a dividend, approve a restructuring, or approve strategic decisions regarding investments that people from the London office have formulated.

Even as a Holding Corporation, Holdings's Nerve Center Is Still Philadelphia

Putting aside Holdings's role as sole member of LLC, we still must remand these cases because GSK has not met its burden of persuasion for establishing that Wilmington is Holdings's principal place of business. *Hertz*, 130 S. Ct. at 1194. Nor has it established that its principal place of business is any place other than in Philadelphia. Accordingly, limiting our analysis to Holdings's activities as a holding company, we still cannot determine that removal was proper.

What Holdings does in Wilmington is done to comply with Delaware law. It does no more there than is necessary to preserve its corporate status as a Delaware corporation under Delaware law. Its quarterly board meetings are mere formalities to ratify decisions made elsewhere. Its actions at those meetings do not direct, control or coordinate its real business activities.

*Hertz* cautions that a corporation's nerve center is "not simply an office where the corporation holds its board meetings." *Id.* at 1192. The Supreme Court observed that "a mail drop box, a bare office with a computer, or the location of an annual executive retreat" reveal "attempts at manipulation." *Id*. at 1195. In that case, the court "should instead take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation." *Id.*

Holdings fits the profile of a company described by the Supreme Court in *Hertz* as an artifice to manipulate jurisdiction. LLC was formed to accomplish a legitimate business purpose and not to manipulate jurisdiction for litigation purposes. Despite its formation for a legitimate purpose, LLC's post-discovery conduct in these cases smacks of jurisdictional manipulation.

In these proceedings, after the deposition testimony of its president and its vice-president, and documents it had produced reflected that Philadelphia was its headquarters, Holdings amended its by-laws to change its general place of business and the location of its books and records from Philadelphia to Wilmington. At the time of LLC's formation and before discovery closed in these cases, the by-laws at Article IV, Section I, read: ". . . the general office of the Corporation, with the books and papers thereto belonging, shall be at Philadelphia, Pennsylvania." On October 29, 2010, one year after the conversion and when jurisdictional discovery was about to close, the by-laws were amended to change the record office location to Wilmington, Delaware.

LLC also requested the government to change the name of the contractor with a Philadelphia address from Holdings on various contracts entered before and after the date of the conversion. In various contracts with the United States government to provide certain drug products, the vendor is listed as either or both SKB and/or Holdings with a Philadelphia address. After filing its motions for remand, LLC requested the government to change the names of the contractors. The only conceivable purpose of these belated actions can be to bolster LLC's contention, in this and later cases, that Holdings's principal place of business is in Wilmington.

Wilmington is not the headquarters or "nerve center" of either LLC or Holdings. Until LLC decided to remove numerous Paxil cases from the state court on the basis of diversity jurisdiction, Holdings had listed its business address as One Franklin Plaza, Philadelphia, Pennsylvania, and the by-laws dictated that it maintain its books and records there. The vice-president of Holdings, Michael Corrigan, who also serves as the vice-president of LLC, has his office in Philadelphia. He is a decision-maker for both Holdings and LLC. In his

dual role, he directs, controls and coordinates activities of both entities from his Philadelphia office.

Heslop, whose artfully crafted declaration had been used in prior litigation to defeat remand,[39] testified that Holdings has no employees. In these cases, in a declaration, McLamb still did not state that Holdings had any employees in Delaware. Later, in his deposition, McLamb testified that Holdings has one employee on its payroll, Bothner, another Wilmington Trust employee. She spends less than 20 hours a year working for Holdings.

As the jurisdictional discovery revealed, the Delaware office of Holdings is a sparsely furnished 10' x 10' room. Although there is a telephone in the room, incoming calls are routed to a Wilmington Trust operator who in turn patches them into the Philadelphia headquarters of LLC. The quarterly board meetings are not held in the office, but in a Wilmington Trust conference room on another floor of the building. As Heslop characterized it, the lease to the Wilmington space is "immaterial" in the scheme of things.

The Wilmington address of Holdings serves as the same address for a multitude of companies. Holdings's mail is forwarded to LLC's office in Philadelphia by a Wilmington Trust employee. Wilmington Trust performs this mail forwarding service for hundreds of other companies using the same address. It is apparent that the Wilmington address is a place where Holdings "simply" holds its mandatory board meetings, which the *Hertz* court warned is not a sufficient location to fix the corporation's principal place of business. *See*

---

[39] The defendant calls our attention to two district court decisions that found LLC to be a Delaware citizen. *See White v. SmithKline Beecham Corp.*, Civ. A. No. 10-2141, 2010 WL 3119926 (E.D. Pa. Aug. 6, 2010); *Hoch v. Eli Lilly & Co.*, 736 F. Supp. 2d 219 (D.D.C. 2010). Those decisions were based upon Heslop's declaration and the district judges did not have the benefit of the record we have.

*Hertz*, 130 S. Ct. at 1192.

As Heslop and Corrigan testified, Holdings reviews financial statements and determines dividends to be paid. Indeed, the undisputed fact that the quarterly board meetings of Holdings last no more than 15 or 20 minutes belies any argument that any operational or strategic decisions affecting the business activities are made during these brief meetings, which are often attended telephonically by the two directors who are employed by GSK companies.

Because LLC was formed to accomplish a real business purpose, one could argue that there is no jurisdictional manipulation. Nevertheless, the by-laws identifying Philadelphia as Holdings's business address and the location of its books and records, and the contracts bearing Holdings's address at Philadelphia show that Holdings considered Philadelphia its headquarters.

We shall put aside the post-removal jurisdictional manipulation and, as directed by the Court in *Hertz*, "instead take as the 'nerve center' the place of actual direction, control, and coordination." The following factors lead us to conclude, even without considering LLC's business, that the actual "nerve center" of Holdings is in Philadelphia: Holdings's by-laws had listed Philadelphia as its business address; Holdings was identified as the contractor with a Philadelphia address on various government contracts entered before and after the date of the change of LLC's corporate form; Holdings does no more in Wilmington than is necessary to preserve its corporate status as a Delaware corporation under Delaware law; Holdings's quarterly board meetings are mere formalities to ratify decisions made elsewhere; two of the three Holdings's directors spend more time preparing for the board meetings outside of Delaware than they do attending the meetings;

the agenda of board meetings is prepared in Philadelphia at LLC; Holdings's only Delaware director, McLamb, is a "rent-a-director," spending four hours per year on his duties; Holdings's Delaware office is the size of a closet and not used to conduct any business; and, Holdings's mail and phone calls are forwarded to LLC in Philadelphia.  These factors demonstrate that Holdings's principal place of business is not in Delaware as contended by the defendant.

### Conclusion

Because the decisions affecting the business operations and activities of LLC are made in Philadelphia, Pennsylvania by its officers and directors there and Holdings has delegated its operational decision-making related to LLC's business to LLC, we conclude that the defendant's principal place of business is Philadelphia.  Additionally, the defendant has not satisfied its burden to show that the place of actual direction and control of Holdings's investment functions is any place other than in Pennsylvania.  Therefore, because the defendant, as a Pennsylvania citizen for jurisdictional purposes, cannot remove these actions on the basis of diversity, the motions for remand will be granted.